IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE ESTELLA WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　Defendant.　　　　　　　　／ | No. C -14-01685(EDL)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND GRANTING DEFENDANT'S CROSS-MOTION TO DISMISS** |

**I.	INTRODUCTION**

On April 11, 2014, Plaintiff Marlene Estella Williams filed this suit pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision denying her claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 400 et seq., 42 U.S.C. § 1381-1383f.  Thereafter, Ms. Williams filed a Motion for Summary Judgment asking this Court to reverse the final decision of the Commissioner and find her "disabled" under the Social Security Act, or alternatively, to remand the case for a new hearing.  For the following reasons, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

**I.	PROCEDURAL HISTORY**

　**A.	Williams I**

Plaintiff Marlene Estelle Williams initially filed an application for SSI on November 1, 2007. Administrative Record ("AR") at 138-144.  In her initial application, she claimed that she became disabled on December 1, 2005 as a result of vertigo, depression, anxiety, morbid obesity and hypertension. AR 163.  Ms. Williams alleged that her impairments limited her ability to work because of dizziness, an inability to concentrate, depression and inability to sit or stand for long periods of time. AR 163.  Ms. Williams' application was denied initially, upon reconsideration, and by an Administrative Law Judge ("ALJ") in a decision dated June 4, 2010.  AR 17-26.

In her 2010 opinion, ALJ Maxine Benmour found that Plaintiff had the following severe impairments: back, knee, and shoulder pain; obesity; depressive disorder; anxiety; hypertension; and carpal tunnel syndrome. AR 22. Although the ALJ acknowledged that such impairments could cause significant limitations in work activities, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 419.920(d), 416.925, and 416.926). AR 22. The ALJ also determined that Plaintiff had the residual functional capacity to perform sedentary work. AR 23. In making this determination, the ALJ acknowledged that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must "make a finding on the credibility of the statements based on a consideration of the entire case record." AR 24. The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 24. The ALJ reasoned briefly:

> Claimant's testimony is not entirely credible. Her testimony regarding the severe level of pain is not supported by the relatively mild objective findings. Her testimony that she suffers fatigue as a side effect from her medication is not credible because when she mentioned this to her doctors, she stated that they just tell her to rest.

AR 24. In light of Plaintiff's residual functional capacity, age, education, and work experience, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform after consultation with a vocational expert. AR 25. Consequently, the ALJ found that Plaintiff was not disabled for purposes of SSI benefits. AR 26. The Appeals Counsel denied Plaintiff's request for review of the ALJ's decision, and thus the ALJ's decision became the final decision of the Commissioner of Social Security. AR 1-3.

### B. Judicial Review of Williams I

On June 16, 2012, Plaintiff timely commenced an action for judicial review pursuant to 42 U.S.C. § 405(g) seeking judicial review of the ALJ's 2010 decision to deny her claim for social security benefits, and she filed a motion for summary judgment asking this Court to either reverse

1   the final judgment of the Commissioner and find her disabled or remand this case to the ALJ for a
2   new hearing.  Plaintiff argued that the ALJ erred by: (1) failing to consider the combined effect of
3   her obesity on her other impairments; (2) failing to properly credit her treating medical provider(s);
4   (3) discounting her testimony as not credible and failing to provide sufficient detail in the credibility
5   determination, making meaningful review impossible; (4) failing to recognize that her mental
6   impairments support a finding of disability; and (5) failing to provide a proper hypothetical to the
7   Vocational Expert for analysis.  See generally Williams v. Astrue ("Williams I"), 11-CV-2962 EDL.
8    The government filed an Opposition and Cross-Motion for Summary Judgment.
9        On March 22, 2013, this Court granted in part and denied in part the cross-motions for
10  summary judgment and remanded the case for further proceedings consistent with the Court's
11  opinion.  AR 763-803.  The Court rejected most of Plaintiff's challenges to the ALJ decision but
12  "remand[ed] on the very limited basis that the ALJ erred in failing to provide adequate reasons to
13  support her credibility determination."  Williams I MSJ Order at 20.  The Court held that if a
14  claimant submits objective medical evidence of the underlying impairment which could reasonably
15  be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering,
16  "the ALJ can only reject the claimant's testimony about the severity of his symptoms by offering
17  specific, clear and convincing reasons for doing so."  Id.  Additionally, the Court stated that an "ALJ
18  may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported
19  by objective medical findings."  Id. at 27 (citing Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).
20  However, the Court also pointed out that "[i]f the ALJ's credibility finding is supported by
21  substantial evidence in the record, the Court may not second-guess the ALJ's finding."  Id. at 20.
22       On the record before it, the Court determined that the ALJ's opinion did not provide
23  sufficiently clear and convincing reasons for discrediting Plaintiff's pain testimony and remanded
24  for the ALJ to either provide clear and convincing reasons or properly credit Plaintiff's testimony.
25  Id. at 29.  The Court found that it was unclear from the ALJ's opinion whether she considered any of
26  the factors listed in Social Security Ruling 88-13 or what medical findings she relied upon to
27  discredit Plaintiff's pain testimony.  Id. at 28.  In its opposition, Defendant pointed to portions of the
28  record evidencing mild objective medical findings, and the Court noted in a footnote some evidence

3

regarding the objective findings, but stated that it could not rely on reasons that the ALJ perhaps should have but did not give. Id. at 29.

The Court also found that the ALJ gave insufficient reasons for discrediting Plaintiff's testimony that she was disabled in part due to medication-related fatigue. Id. The Court nonetheless acknowledged that the very limited evidence in the record "appears to be insufficient to support Plaintiff's allegedly disabling fatigue as a symptom of her medically determinable impairments." Id. at 30-31. As with pain, the ALJ's terse opinion was not harmless error because there was some limited evidence that if Plaintiff's testimony regarding her fatigue were credited, she would be unemployable. Id. at 31. The Court remanded to the ALJ to provide clear and convincing reasons for discrediting Plaintiff's fatigue testimony or properly credit this testimony. Id.

Based on these conclusions, the Court further found that the ALJ might have given the Vocational Expert an improper hypothetical, stating: "[I]f Plaintiff's pain and fatigue testimony is given additional credit on remand, then it is possible that the ALJ's RFC assessment would be different. If that is the case, then the hypothetical posed to the VE might have been incorrect." Id. at 40. The Court concluded that, "the ALJ only partially erred by not giving sufficiently specific reasons regarding pain and fatigue and gave specific and legitimate reasons for discounting some evidence as described above. However, the record is insufficient to determine whether Plaintiff is disabled, so the Court remands this matter for further proceedings." Id. at 40-41.

### C. Williams II

On August 27, 2010 and September 12, 2012, Plaintiff filed additional applications for disability benefits and requested an amended alleged onset date of May 6, 2010 in lieu of December 1, 2005 based on an additional severe impairment of carpal tunnel syndrome. AR 863. Following this Court's remand of Williams I, the SSA's Appeals Council ordered consolidation of the remanded action with Plaintiff's subsequently filed claims. The Appeals Council ordered the same ALJ originally assigned to Plaintiff's claim to offer the claimant the opportunity for a hearing and take any further action needed to complete the administrative record and to "associate the claim files and issue a new decision on the associated claims." AR 806.

### D. ALJ Hearing on Williams II

4

On December 5, 2013, the ALJ held a hearing on the consolidated claims. AR 727-753. During the hearing, Plaintiff testified that she has pain in both hands, had surgery related to carpal tunnel syndrome on her right side in May 2010 but continues to have pain "to a certain extent," and surgery on her left hand is anticipated. AR 730-31. She stated that she can pick things up, but sometimes drops what she has picked up. AR 734-35. She also testified that she suffers from shoulder and back pain most of the day, and neck pain once a day, if at all. AR 738-739, 741. She was taking Percocet for pain, but switched to Norco. AR 733. She testified that she has no pain when she takes her pain medication, but it makes her sleepy and tired. AR 733, 736. According to Plaintiff, her pain medication works to relieve her pain approximately two of every four hours. AR 745-746.

Plaintiff testified that she takes Lamictal for bipolar disorder, Klonopin for anxiety, Gabapentin for nerves, Atenolol for her heart, Albuterol for asthma, Omeprazole for acid reflux, a medication for vertigo, and a sleeping pill. AR 736-39. According to Plaintiff, her vertigo occurs only when she is lying down and she has no vertigo when she takes her medication. AR 739. She has a machine to help manage her sleep apnea. AR 740. Plaintiff testified that she has trouble sitting for more than 45 minutes without back pain, but medication helps. AR 741. She testified that she has problems with walking and standing due to a cyst on her foot. AR 741-42. She claims she can walk for about 20 minutes and stand for 15 minutes and lift approximately 10-15 pounds. Id. She testified that she generally does not have trouble with personal care such as getting dressed and showering, except for tasks that involve bending down. AR 742. She lives with her sixteen year old son and is able to do housework and shopping with the help of her son and older children. AR 743. Plaintiff testified that on a normal day, most of the time she "just relax[es]" and watches television for three or four hours, sometimes naps for an hour or hour and a half, and lays in bed for several hours as well. AR 743-44. Sometimes she goes outside during the day. AR 744.

A vocational expert ("VE"), Mr. Van Winkle, testified at Plaintiff's 2013 hearing. AR 751-752. The ALJ presented the VE with the hypothetical of a person of Plaintiff's age and background limited to lifting and carrying 10 to 20 pounds, sitting six hours in an eight hour day and standing or walking for two, occasional climbing, balancing, stooping, kneeling, crouching and crawling,

frequent bilateral handling and fingering, who is also required to avoid concentrated exposure to hazards. AR 750-51. The VE testified that there were jobs in the regional or national economy that such a hypothetical person could do, such as production inspector and bench assembler. AR 751-52. The ALJ then adjusted the hypothetical to include the restriction that the individual would need to lie down for three or four hours during the workday. The VE testified that there are no jobs in the national economy that such a person could do. AR 752.

### E.    ALJ Decision on <u>Williams II</u>

On January 31, 2014, the ALJ issued an unfavorable post-hearing decision on the consolidated claims including the claim remanded from this Court. AR 706-724. The ALJ characterized this Court's remand order as follows:

> The court rejected most of claimant's challenges to the ALJ decision but remanded on the limited basis that the ALJ erred in failing to provide adequate reasons to support her credibility determination. The court stated that the ALJ did not provide clear and convincing reasons for discrediting claimant's pain testimony, and gave insufficient reasons for discrediting claimant's 'fatigue' testimony. The court also stated that the ALJ may have failed to provide a proper hypothetical to the vocational expert. The court noted that the ALJ only partially erred by not giving sufficiently specific reasons regarding pain and fatigue and specific and legitimate reasons for discounting some evidence.

AR 710 (internal citations omitted). In her 2014 opinion, the ALJ stated that she considered medical evidence dated prior to the amended alleged onset date of May 6, 2010 for "historical context" as well as new evidence post-dating Plaintiff's carpal tunnel surgery. AR 715. Ultimately, considering the record as a whole, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since October 31, 2007, the date the application was filed." AR 710, <u>see also</u> 715.

At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 6, 2010, the amended alleged onset date, or ever. AR 712, 718. At step two, the ALJ found that Plaintiff has the following severe impairments that cause significant limitations on her ability to perform basic work activities: "vertigo, bilateral knee degenerative joint disease (DJD), lumbar spine degenerative disc disease (DDD), morbid obesity,

carpal tunnel syndrome (CTS), coronary artery disease (CAD), and depression." AR 712.[1] At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 419.920(d), 416.925 and 416.926. Id. In coming to this conclusion, the ALJ considered the combined effect of Plaintiff's obesity on her other impairments. Id. As she did in 2010, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or equal a listed impairment though she has mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence or pace but has not experienced any episodes of decompensation.

At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work as follows: "able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour workday; stand and or/walk for 2 hours in an 8 hour workday; cannot climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; must avoid all exposure to hazards; and is limited to simple repetitive tasks with occasional contact with supervisors, co-workers, and the public." AR 714.

The ALJ's discussion of the evidence in her 2014 opinion in part repeats her 2010 opinion. In the 2014 opinion, the ALJ again relied in part on state agency medical consultant Dr. Dipsia's RFC assessment from March 25, 2008. AR 715. The ALJ afforded very little weight to state agency medical consultant Dr. Gallucci's mental RFC assessment of March 20, 2008 because the ALJ found that Plaintiff's mental limitations are greater than those found by Dr. Gallucci. AR 716. It does not appear that the record contained any opinion from a consulting examiner after 2008. As she did previously, the ALJ afforded reduced weight to Plaintiff's treating nurse practitioner Darrel Brown's opinion that Plaintiff could stand/walk and sit zero to two hours in an eight hour workday because he failed to provide an explanation for Ms. Williams' inability to sit based on issues with her knee and

---

[1] In her decision dated June 4, 2010, the ALJ found that Ms. Williams had the following severe impairments: "back, knee, and shoulder pain; obesity; depressive disorder; anxiety; hypertension; and carpal tunnel syndrome." AR 22.

7

hand, and knee and spine x-rays showed only mild findings. In contrast, the ALJ found the state agency's limitation that Ms. Williams could only sit for two hours in an eight-hour workday to be credible because of her obesity and diagnosis of internal derangement. The ALJ found that there was limited evidence regarding Plaintiff's alleged limitations regarding the use of her hands and no evidence from any source of an inability to perform repetitive motions with her hands. However, in light of Plaintiff's carpal tunnel surgery and recent evidence and Plaintiff's hearing testimony, and in contrast to Dr. Dipsia's RFC assessment that no manipulative limitations had been established, the ALJ limited Plaintiff to frequent handling and fingering. AR 716. The ALJ found that the limitation of "simple jobs with occasional contact with people" was reasonable in light of Ms. Williams' documented depression and anxiety. AR 717. The ALJ found that the Plaintiff's GAF score of 60 at Redbud Family Health Center in August 2008 was not severe enough to limit her to any further restriction, and found that the much lower GAF score of 45 in January 2010 was explained by the loss of her friend who had passed away that afternoon. AR 25. The ALJ stated that there was no RFC assessment from a treating mental health source that limited her to any further restriction. AR 717.[2] The ALJ limited Plaintiff to avoiding concentrated exposure to fumes, odors, dusts, gases and poor ventilation due to heart disease, but does not cite any medical or other evidence for this limitation. AR 717.

In developing this RFC assessment, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" AR 715. Regarding pain, the ALJ noted Plaintiff's testimony that she has no pain when she takes Percocet and Norco pain medication, she has had very limited treatment, and there is no recommendation for another surgery on the right hand or one on the left hand. AR 717. The ALJ found that Plaintiff's testimony regarding her hands was consistent with the manipulative

---

[2] Plaintiff argues that the ALJ largely ignored evidence of Plaintiff's treatment at the Clearlake Family Health Center between October 19, 2009 and December 9, 2013 for depression, anxiety and bi-polar disorder. Plaintiff had regular appointments with APRN Julie Payette, who prescribed medication, interviewed Mrs. Williams and regularly performed Global Assessment of Function ranging from a low of 30 on December 16, 2010 (AR 924) to a high of 60 on April 9, 2012 (AR 949). However, as discussed further below, none of the records relating to Plaintiff's mental health reveal any significant discussion regarding Plaintiff's level of pain or fatigue or any resulting functional limitations.

8

limitations in the RFC, and her difficulty with bending despite medication was also reflected. AR 717. Regarding fatigue and vertigo, the ALJ further acknowledged Plaintiff's testimony that she suffers from drowsiness and vertigo from her medications, but noted Plaintiff's unequivocal testimony that medication helps with vertigo. AR 739.[3] The ALJ stated that she limited Plaintiff to sedentary work and to avoid exposure to fumes, odors, dust, gases and poor ventilation based on her testimony that she tires easily and suffers from shortness of breath. However, the ALJ rejected Plaintiff's testimony that she needs to sleep for one to one and one-half hours three times a week and lies in bed for three to four hours every day because "there is no evidence in the medical record that claimant reported this level of fatigue to her doctors. Also, there is no opinion from any treating source since the claimant's amended AOD of May 6, 2010 that she suffers from such severe pain and fatigue that she cannot perform any type of work." AR 717.

At step five, the ALJ determined that Plaintiff was 42 years old at the time of her alleged onset date, has no past relevant work, has a high school education and is able to communicate in English. Based on her age, education, work experience and RFC, and relying on the testimony of a vocational expert, the ALJ determined that there are jobs existing in significant numbers in the national economy that Plaintiff could perform and therefore Plaintiff is not disabled. AR 718-19.

## II. FACTUAL BACKGROUND

Ms. Williams was born on May 9, 1967 in El Salvador. AR 138, 465. She was raised in the United States and has a high school education. AR 465. Ms. Williams has four children, one of whom lived with her as of the time of her 2013 hearing before the ALJ. AR 742-43. Her children's father died suddenly of a heart attack in 2007. AR 465. Prior to her alleged onset date, Ms. Williams only had three short-term jobs in the last fifteen years. AR 53; see also AR 863 (admitting that she has never participated in substantial gainful activity). From November to December 2005, she worked as a stocker in a retail store. AR 53. In 2008, she worked as a leaf collector for approximately two months. AR 54. In 2007, she worked for her mother doing in-home supportive

---

[3] Plaintiff argues that the ALJ failed to consider what impact if any resulted from her finding that Plaintiff had a severe impairment of vertigo and/or what limitation vertigo had on her ability to work. However, given Plaintiff's testimony that she only has vertigo when laying down and medication relieves it entirely (AR 739, 747), any error in not expressly focusing on this impairment as part of the RFC assessment was harmless.

9

services for approximately six months. AR 54. Ms. Williams' sixteen year old son helps her with most of the housework around the house including grocery shopping, laundry, and cooking. AR 743. Ms. Williams was represented at her most recent hearing before the ALJ by Irene Lontz. AR 727. Ms. Lontz submitted a statement and additional evidence on Plaintiff's behalf in advance of the December 5, 2013 hearing. See AR 863-972. Plaintiff is currently represented by counsel.

### A.   Medical History

Ms. Williams' medical record reflects a history of medical issues. Redbud Family Health Center (a.k.a Adventist Health, a.k.a Clearlake Family Health Center) and St. Helena Hospital Clearlake appear to have been her primary health care facilities for many years. See generally AR 252-461, 532-562, 597-631, 650-705, 869-972. Ms. Williams' primary treating medical providers appear to be Dr. Schug, M.D., Darrel Brown, F.N.P., and Julie Payette, A.P.R.N. Ms. Williams is approximately 5 feet, 2 inches tall and weighs 272 pounds. AR 68. It appears that she has suffered from anxiety and obesity since approximately 2000. AR 303. On May 6, 2010, Ms. Williams had surgery for carpel tunnel syndrome ("CTS"). AR 55.

A detailed description of the medical evidence in the record in Williams I was included in this Court's prior order and is not repeated herein. See AR 764-776 (MSJ Order at 2-14). In addition to this evidence, Plaintiff supplemented the record and submitted additional medical evidence in advance of her second hearing before the ALJ in light of her amended alleged onset date of May 6, 2010. See AR 866-972. This new evidence is described below.

#### 1.   Paul L. Axtell, M.D.

For Williams II, Plaintiff added additional medical records from Dr. Axtell, who had previously treated Plaintiff for issues relating to her hands, ankles and feet. In 2009 and 2010, Dr. Axtell diagnosed Plaintiff with carpal tunnel syndrome and tried a conservative treatment approach including cortisone injections. AR 642-44. In a March 16, 2010 report, Dr. Axtell found that Plaintiff's carpel tunnel syndrome had gotten worse, believed that conservative management was no longer working, and recommended surgery. AR 639, 870.

10

1    On May 6, 2010, Plaintiff underwent surgery for a right carpal tunnel release. AR 873-74. On
2 May 4, 2011, Dr. Axtell performed a follow-up examination of Plaintiff and gave her a cortisone
3 injection in her left wrist. He noted that "based on her poor result from the previous carpal tunnel
4 release, we are going to try to hold off on any further surgery for her." AR 877. In July 2011,
5 Plaintiff returned to Dr. Axtell, who noted that the cortisone injection helped her significantly,
6 "though it is giving her more symptoms now." AR 878.

### 2. Julie Payette, APRN

Plaintiff also supplemented the record for Williams II with additional medical records from her treating nurse practitioner Julie Payette. As discussed in this Court's summary judgment order, Ms. Payette saw Plaintiff beginning in 2008 for mental health related issues, including anxiety, depression, and bi-polar disorder and prescribed Plaintiff various medications. AR 569-574, 579-589, 612-14, 620-21. In January 2010, Ms. Payette saw Plaintiff for a follow-up related to bi-polar disorder with generalized anxiety disorder and did not mention fatigue or pain in her report. AR 922. On December 16, 2010, Ms. Payette altered some of Plaintiff's medications but did not mention fatigue or pain in her report. AR 924-25. In January 2011, Plaintiff reported to Ms. Payette that her Lamictal medication made her feel energized but jittery. AR 926-30. In February 2011, Ms. Payette noted that a smaller dose makes her feel "a little bit sleepy" and "she tends to get sedated by most of the things we try." AR 931-32. In March 2011, Plaintiff reported that "her sleep has been good" and she has been "sleeping quite a bit, relaxing quite a bit, and taking care of herself in a way that she had not generally been doing." AR 933-34. Plaintiff did not report pain or fatigue to Ms. Payette in June, August, November or December 2011, but did report feeling weak and fatigued in July 2011. AR 935-944. In January 2012, she reported having trouble with sleep but there is no mention of sleep or pain in the April or July 2012 reports. AR 945-50. On August 6, 2012, Plaintiff reported that "when she takes her medicine she does feel stable with a good sleep pattern." AR 951-52. In February 2012, Plaintiff reported that she "does not have much get-up-and-go energy." AR 955. In July 2013, Plaintiff stated that she is "mellow on her medications. AR 959. Clinical notes from August and December 2013 list fatigue as a historic symptom of her anxiety and depression,

11

but not as an active problem. AR 961-972. Shoulder pain was listed as an ongoing problem, but there is no discussion in the notes about the degree or any limiting effect of the pain. Id.

### 3. Jeong Park, MD

In April 2011, Dr. Park examined Plaintiff for possible coronary artery disease but found that most of her tests were normal through she had left myocardial ischemia. AR 906-07. Thereafter Plaintiff went to the emergency room for chest pain and palpitations but doctors found no evidence of acute heart injury. AR 908-912.

### 4. Bradley Clair, MD

In May 2011, Plaintiff sought a second opinion from cardiologist Dr. Clair after Dr. Park recommended an angiogram. Dr. Clair also recommended a coronary angiography. AR 868. In March and April 2012, Plaintiff returned to Dr. Clair due to chest pain and palpitations, and he found that she did not have significant coronary artery disease but scheduled a stress test. AR 881-87. Her stress test results were normal, and exercise was recommended. AR 890-91. In May 2013, Dr. Clair reexamined Plaintiff, found nothing significant, and determined to see her again in a year. AR 893.

### 5. Other

From at least June through September 2013, Plaintiff was seen on several occasions for foot pain resulting from a cyst. AR 895-903. In August 2012, an examination revealed relatively limited disk disease in her spine. AR 917.

## VI. STANDARD OF REVIEW

According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on legal error. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is defined as relevant evidence which a reasonable person might accept as adequate in support of a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995.) If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ. Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ's decision will not be reversed for harmless error. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

**A.   Definition and Determination of Disability**

In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA utilizes a five-step sequential evaluation process in making a determination of disability. 20 C.F.R. § 404.1520 (2009); see Reddick, 157 F.3d 715, 721. If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520.

First, the SSA looks to the claimant's work activity, if any; if the claimant engages in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA considers whether the claimant suffers from a severe impairment or number of impairments which has lasted or is expected to last twelve months or end in death. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the SSA considers the severity of the impairments; the claimant is disabled if he or she has an impairment that meets or equals one of the listings set forth in 20 C.F.R., part 404, subpart P, appendix 1, which sets forth impairments whose level of severity conclusively establishes disability, irrespective of vocational factors. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the residual functional capacity ("RFC") and past relevant work; if the claimant can

13

still engage in past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, the SSA again considers the RFC and age, education, and work experience to see if the claimant is able to make an adjustment to another occupation in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).

### B. Credibility.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step process.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  First, the ALJ must determine whether the claimant has submitted objective medical evidence of the underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991).  Next, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so.  Id. at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)); see also Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (rejecting government's challenge to "specific, clear and convincing" legal standard).  If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not second-guess the ALJ's finding. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

### VII. DISCUSSION

In her motion for summary judgment, Plaintiff argues that: (1) her testimony is credible and should be credited fully; (2) the ALJ inaccurately and incompletely reported the medical records; (3) the ALJ failed to properly weigh all of her treating source opinions; and (4) the ALJ failed to properly determine the limitations stemming from Plaintiff's coronary artery disease, vertigo and bipolar disorder.  In its opposition and cross-motion for summary judgment, the Government does not specifically address any of Plaintiff's arguments, instead generally contending that substantial evidence supports the ALJ's decision and it is free of legal error.

On Reply, Plaintiff abandons most of her arguments, focusing entirely on the ALJ's alleged failure to comply with the Court's remand order to give clear and convincing reasons for rejecting

14

1 Plaintiff's pain and fatigue testimony or credit her testimony as true. Plaintiff argues that the ALJ
2 should only have re-considered evidence and testimony relating to Plaintiff's pain and fatigue, and
3 contends that although additional evidence was submitted after remand, it was not substantially
4 different from the other evidence and her complaints are the same or worse. Reply at 3.[4]

### A. The ALJ Complied With The Court's Order on Remand.

In its prior Order granting in part and denying in part the cross-motions for summary judgment and remanding the case, the Court found that the ALJ's opinion in Williams I did not provide sufficiently clear and convincing reasons for discrediting Plaintiff's pain testimony and remanded for the ALJ to either provide clear and convincing reasons or properly credit Plaintiff's testimony. Id. at 29. The Court also found that the ALJ gave insufficient reasons for discrediting Plaintiff's testimony that she was disabled in part due to medication-related fatigue, and remanded the case to the ALJ to provide clear and convincing reasons for discrediting Plaintiff's fatigue testimony or properly credit this testimony. Id. Based on these conclusions, the Court further found that the ALJ might have given the Vocational Expert an improper hypothetical.

Plaintiff argues that the ALJ's opinion in Williams II does not comply with this Order because it still fails to give clear and convincing reasons for discrediting Plaintiff's testimony regarding her pain and fatigue. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Lester v. Chater, 81 F.3d 821, 885 (9th Cir. 1995) ("The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). In order to determine a claimant's credibility the following factors should be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the

---

[4] Plaintiff also argues that the "law of the case" applied to the ALJ's decision on remand because "this Court's order is the final decision on the issues of the treating physicians' opinions, and the ALJ exceeded the scope of remand by re-examining issues settled by this Court's prior order and reviewing the case de novo." Reply at 3. While this may ordinarily be true, in this case the remanded claim was consolidated with subsequent claims for a new ALJ decision. Therefore the ALJ was within her power to examine the record as a whole, including new medical evidence, to determine whether Plaintiff was under a disability as of her amended alleged onset date of May 6, 2010. Further, contrary to Plaintiff's position, the ALJ does not appear to have decided any issue that was before her in Williams I differently in Williams II although she included additional reasoning for her credibility determination.

claimant's testimony and her conduct;  (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); 20 C.F.R §§ 404.1529(c), 416.929(c).  Social Security Ruling 88-13 also lists a number of factors the ALJ can consider in making their credibility determination.  The factors include:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions; 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

See Burch v. Barnhart, 400 F. 3d 676, 680 (9th Cir. 2004); SSR 88-13.

In her 2014 decision, the ALJ again found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"  AR 715.  Regarding hand pain, the ALJ noted Plaintiff's testimony that she has no pain when she takes Percocet and Norco pain medication, she has had very limited treatment, and there is no recommendation for another surgery on the right hand or one on the left hand.  AR 717.  The ALJ also noted Plaintiff's testimony that medication helps with her shoulder, neck and back pain, and that difficulty with bending is reflected in the RFC.

The ALJ's reasons for discrediting Plaintiff's pain testimony a second time are more specific than those given in her previous opinion and are sufficiently "clear and convincing."  Plaintiff points out that the ALJ relied on the efficacy of Plaintiff's pain medications, including Plaintiff's testimony about her relief with medication, but did not mention her testimony that medication relieved her pain only about two of every four hours.  Plaintiff also argues that the ALJ relied on Plaintiff's lack of hand surgery but did not mention that the reason that there was no recommendation for an additional carpal tunnel surgery on Plaintiff's left hand or one on her right was because of the "poor result" of the first surgery.  AR 877.  However, these omissions do not amount to a failure to provide clear and convincing reasons for rejecting Plaintiff's credibility regarding the degree of her pain, where Plaintiff's own testimony also reflected significant use of her hands (i.e., writing with a pen) and

16

1 shoulder and neck pain only once a day. Further, the ALJ noted that cortisone injections helped
2 Plaintiff significantly. The Court will not "second guess" the ALJ's finding on this issue. See
3 Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Morgan v. Commissioner of the
4 Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Regarding fatigue, the ALJ acknowledged Plaintiff's testimony that she suffers from drowsiness and vertigo from her medications, but noted Plaintiff's testimony that medication helps with vertigo. The ALJ rejected Plaintiff's testimony that she needs to sleep for one to one and one-half hours three times a week and lies in bed for three to four hours every day because "there is no evidence in the medical record that claimant reported this level of fatigue to her doctors. Also, there is no opinion from any treating source since the claimant's amended AOD of May 6, 2010 that she suffers from such severe pain and fatigue that she cannot perform any type of work." AR 717. Plaintiff argues that the ALJ ignored repeated reports of excessive daytime sleepiness, citing pages 921, 925, 932, 933, 937, 959-960, 961, 965, and 969 of the Administrative Record. However, none of these records reflect any self or medical report of excessive daytime sleepiness. At most, they reflect that Plaintiff self-reported some level of fatigue on occasion to Ms. Payette (AR 921, 931, 937, 955), but also reported that she was "energized" and getting good sleep at other times (AR 926, 933, 949, 951). While not as detailed as they could be, the reasons given by the ALJ in her second decision to discredit Plaintiff's testimony regarding the level of her fatigue are sufficient, especially given the lack of medical evidence relating to the degree of Plaintiff's fatigue and the undisputed fact that she never reported a need to sleep for several hours a day to any doctor. The ALJ's decision on this issue is also affirmed.

### B.  Any Other Error Was Harmless.

In her moving papers, Plaintiff made several other arguments which she abandoned on reply. However, for the sake of completeness these arguments are addressed briefly herein.

First, Plaintiff initially argued that the ALJ committed error by failing to discuss medical records from treating physician Dr. McQuaid, who saw Plaintiff for foot pain due to a cyst in 2013, and Drs. Mizl, Jennings and an unknown doctor, who signed off on Ms. Payette's mental evaluations of Plaintiff from 2009 through 2013. See AR 896-903, 919-22, 935, 937. Plaintiff contends that the

17

1 ALJ should have re-contacted these treating physicians for functional limitations based on their
2 assessments. However, the ALJ mentioned Plaintiff's foot cyst but correctly stated that "there is no
3 indication of any work-related limitations due to this impairment or that any impairment related to
4 her foot will last for 12 months." AR 712; see also AR 892, 895-903 (medical exam notes May
5 through September 2013 from Dr. McQuaid). Therefore, it did not qualify as a severe impairment
6 requiring a functional limitation assessment from Dr. McQuaid. Further, the ALJ's RFC
7 determination limited her to sedentary work, sitting for six of eight hours in a workday, and
8 occasional ramp and stair climbing, balancing, stooping, kneeling, crouching and crawling, and
9 therefore took into account her foot pain. Any error in failing to specifically mention Dr. McQuaid's
10 reports concerning Plaintiff's foot cyst was harmless.

11 Similarly, the ALJ's failure to specifically discuss the doctors who signed off on Ms.
12 Payette's mental health evaluations of Plaintiff was, at most, harmless error. These doctors do not
13 appear to have conducted any independent evaluation of Plaintiff and thus their opinions are the
14 same as those contained in Ms. Payette's reports, which were considered. Plaintiff argues that the
15 ALJ failed to properly consider *all* of Ms. Payette's reports relating to her mental health from 2009
16 through 2013. See generally AR 919-971. Plaintiff acknowledges that Ms. Payette is an "other
17 source" whose opinion may be discounted, but argues that the ALJ should have given some reason
18 for "ignoring" her reports. However, there is no indication that the ALJ discounted Ms. Payette's
19 reports as an "other source" or ignored her reports. Though the ALJ only specifically cited two of
20 Ms. Payette's multiple mental health reports (AR at 717), Plaintiff herself admits that her new
21 medical evidence is largely duplicative of her previous evidence. See Reply at 3. The ALJ was not
22 obligated to discuss each of the very similar reports prepared by Ms. Payette and signed off on by
23 other doctors. In any event, this Court previously held that Plaintiff's mental impairments do not
24 support a finding of disability, and Plaintiff has not cited any new or additional evidence that would
25 alter this determination. See AR 793-800.

26 Further, Plaintiff contended in her moving papers that the ALJ failed to properly determine
27 the limitations from her alleged coronary artery disease, vertigo and bipolar disorder and instead
28 relied on the outdated 2008 opinions of consultative examiners Dr. Golnick-Hallows and Dr.

18

Galluci. She points out that neither consultative examiner reviewed any medical evidence after 2008, and there was no effort to obtain an updated examination based on the full medical record. However, the ALJ did take into account Plaintiff's coronary artery disease by limiting her to avoiding concentrated exposure to fumes, odors, dusts, gases and poor ventilation. AR 717. Plaintiff contends that these limitations are not tethered to any medical report, but any error in imposing these limitations was harmless given that they are *more* stringent than anything suggested in the medical reports relating to Plaintiff's heart health. See AR 890, 893 (cardiologist recommendation for Plaintiff to start exercising on a regular basis and not mentioning any other limitations). Further, the 2012 medical records relating to Plaintiff's heart health demonstrate no significant coronary artery disease and normal stress tests. AR 883, 888, 890. Further, given that Plaintiff admitted that she only has vertigo when she is lying down and medication relieves it entirely, the ALJ did not err in failing to obtain an RFC assessment related to this alleged condition or providing for this condition in the RFC determination.

Finally, as discussed above, this Court previously held that Plaintiff's mental impairments, including bipolar disorder, do not support a finding of disability and Plaintiff has not cited any new or additional evidence that would alter this determination. See AR 793-800. Indeed, almost all of Ms. Payette's mental health evaluations confirm that, although Plaintiff exhibited signs of depression and/or anxiety, she was consistently alert and oriented with no reported auditory or visual hallucinations and her insight and judgment were grossly intact. See, e.g., 922, 924, 926, 929, 931 (insight and judgment mildly impaired), 933, 935, 937, 939, 941, 943, 945, 947, 949, 951, 953, 955, 959, 963, 967, 971. Rather than demonstrating reversible error, Plaintiff's mental health reports support the ALJ's determination relating to Plaintiff's mental health.

For all of the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 27, 2015

ELIZABETH D. LAPORTE
United States Magistrate Judge